**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**VONNITA MURRAY,**

***Plaintiff*,**

**v.**

**Civil No.: 8:25-cv-02634-JRR**

**THE STATE OF MARYLAND,**

***Defendant*.**

## MEMORANDUM OPINION

Pending now before the court are Defendant the State of Maryland's Motion to Dismiss, or in the Alternative, for Summary Judgment at ECF No. 16 (the "Motion to Dismiss") and Plaintiff Vonnita Murray's Motion to Vacate Judgment and Stay Writ of Possession at ECF No. 9 (the "Motion to Vacate"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, Motion to Dismiss will be granted, and the Motion to Vacate will be denied as moot.

## I. BACKGROUND[1]

Plaintiff initiated this action against Defendant on August 8, 2025, asserting that Defendant violated Article 3 of the United Commercial Code ("UCC") (Count I), Article I, Section 10 of the United States Constitution (Count II), and "due process" pursuant to 42 U.S.C. § 1983 (Count III) based on the following allegations. (ECF No. 1 ¶¶ 13–16.) On or about October 21, 2024, Plaintiff "lawfully issued an International Bill of Exchange (IBOE) drawn in accordance with the Geneva Convention on Bills of Exchange, and UCC § 3-104, intending to satisfy an alleged debt or obligation." *Id.* ¶ 7. That IBOE was personally delivered to the Circuit Court for Prince George's

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *See Byers v. Painter*, 173 F.4th 155, 158 (4th Cir. 2026).

County, Maryland, that same day. *Id.* The circuit court "accepted the instrument by retaining it without return or protest within reasonable time under UCC § 3-501(b)(2)."[2] *Id.* ¶ 9 (emphasis omitted). Plaintiff did not receive a "confirmation of dishonor," "return of the instrument," or "any formal notice rejecting the tender." *Id.* ¶ 10. "Despite acceptance, the State has failed to credit the account, discharge the obligation, or treat the IBOE as valid payment." *Id.* ¶ 12. Plaintiff asks this court to "[d]eclare that [her] IBOE was a lawful tender" that "should have been processed or dishonored pursuant to law," "[o]rder Defendant[] to provide full credit and discharge of the obligation referenced," and award compensatory and punitive damages. *Id.* at p. 3. She also seeks an injunction—presumably related to the action taken by the circuit court—but does not identify what equitable relief she specifically seeks. *Id.*

Based on Plaintiff's subsequent filings in this case, as well as relevant state court records,[3] Plaintiff appears to contend that, because the State did not treat her IBOE as valid payment on an obligation, the circuit court issued an Order of Judgment of Possession, which required Plaintiff (and all other occupants) vacate a home located at 13601 Hebron Lane in Upper Marlboro,

---

[2] Case No. CAD22-16664 in the Circuit Court for Prince George's County, Maryland, shows that Plaintiff filed a "Memorandum of Law on IBOEs" on October 18, 2024. (ECF No. 16-2 at pp. 15–16.) The Memorandum of Law on IBOEs (ECF No. 16-6) describes, *inter alia*, the following:

> The International Bill of Exchange is legal tender as a national bank note, or note of a National Banking Association, by legal and/or statutory definition (UCC 4-105, 12CFRSec. 229.2, 210.2, 12 USC 1813) , issued under Authority of the United States Code 31 USC 392, 5103, which officially defines this as a statutory legal tender obligation of THE UNITED STATES, and is issued in accordance with 31 USC 3123 and HJR- 192(1933) which establish and provide for its issuance as "Public Policy" in remedy for discharge of equity interest recovery on that portion of the public debt to its Principals, and Sureties bearing the Obligations of THE UNITED STATES.

*Id.* at p. 3 (bolding omitted).

[3] While the court ordinarily does not consider matters outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, the court may take judicial notice of matters in the public record. *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004). The court does so here to provide context to Plaintiff's claims that otherwise are difficult to comprehend.

Maryland (the "Property"). (Order for Judgment of Possession, ECF No. 16-4; ECF No. 7; ECF No. 9.)

Upon receipt of Plaintiff's Complaint, the court entered an order denying her request for "emergency injunction" set forth in her Complaint. Plaintiff then filed a "Request for Emergency Injunction and Declaratory Relief and Complaint of Theft of Legal Funds Tender to Clerk," (ECF No. 7), which the court construed as a motion for temporary restraining order. (ECF No. 8.) Therein, Plaintiff seemingly asked this court to enjoin the circuit court's order—the Order of Judgment of Possession—that she and her son vacate the Property. (ECF No. 7.) The court denied that request, noting that Plaintiff failed to comply with the requirements of Federal Rule of Civil Procedure 65(b)(2), and based on concerns arising from the *Rooker-Feldman* doctrine. (ECF No. 8.) Plaintiff then filed her Motion to Vacate. (ECF No. 9.) Defendant thereafter filed its Motion to Dismiss. Because Defendant's Motion to Dismiss addresses threshold issues, the court considers it first.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) concerns dismissal for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Subject matter jurisdiction challenges may proceed in two ways: "either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."

*Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same). Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). "The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D. Md. 2019) (citing *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999)). Where Defendant here mounts a series of facial challenges to this court's jurisdiction, this court need not consider matters outside the Complaint, including materials subject to judicial notice, as discussed above.

**B. Federal Rule of Civil Procedure 12(b)(6)**[4]

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where a plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating

[4] Because the court agrees dismissal of Plaintiff's Complaint is warranted pursuant to Rule 12(b)(1) and 12(b)(6), it need not reach Defendant's argument in the alternative that it is entitled to summary judgment.

the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient.[5] *Twombly*, 550 U.S. at 555.

## III. ANALYSIS[6]

Defendant seeks dismissal of Plaintiff's claims against it on various grounds, including 1) that Eleventh Amendment bars suit against it, 2) the *Rooker-Feldman* doctrine bars this court's

[5] While the court generally does not consider matters outside the pleadings when ruling a Rule 12(b)(6) motion, as discussed above, it is permitted to take judicial notice of public records. *See, e.g.*, *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004). Additionally, Plaintiff attaches a series of documents to her opposition; these documents do not bear on the arguments asserted and the court need not consider same. Regardless, where the documents are not integral to the complaint, attached to, or expressly incorporated in, her Complaint, or otherwise properly subject to judicial notice, they are not properly considered in ruling on the instant Motion. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); FED. R. EVID. 201.

[6] This court is mindful of its obligation to construe liberally the pleadings of self-represented litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (first quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); and then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

review of the circuit court's action, and 3) Plaintiff fails to state any plausible claim. (ECF No. 16-1 at pp. 5–9.)

**A. Eleventh Amendment Immunity**

The court turns first to Defendant's argument that this action should be dismissed because Plaintiff's § 1983 claim is barred by Eleventh Amendment immunity. (ECF No. 24-1 at pp. 5–8.)

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[7] U.S. CONST. AMEND. XI. Under the Eleventh Amendment, states generally enjoy immunity from suit by private individuals in federal court unless a state waives its immunity, or the immunity is abrogated by Congress. *See Bd. of Tres. v. Garrett*, 531 U.S. 356, 363–64 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private

---

[7] The Eleventh Amendment "confirmed . . . state sovereign immunity as a constitutional principle," recognizing that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *In re S.C. Dep't of Parks, Recreation & Tourism*, 103 F.4th 287, 291 (4th Cir.), *cert. denied sub nom.*, 145 S. Ct. 572 (2024) (first quoting *Alden v. Maine*, 527 U.S. 706, 728–29 (1999); and then quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). As the Fourth Circuit has summarized:

> [T]he Eleventh Amendment does not "memorializ[e] the full breadth of the sovereign immunity retained by the States." *Fed. Mar. Comm'n*, 535 U.S. at 753, 122 S.Ct. 1864. Rather, the amendment is "but one particular exemplification of that immunity." *Id.* That is why a state enjoys sovereign immunity when sued by its own citizens, even though the Eleventh Amendment says nothing about such suits. *See Hans*, 134 U.S. at 14–15, 10 S.Ct. 504 (calling it "almost an absurdity on its face" to imagine that a state could be sued by its own citizens but not by other states' citizens). To think that the scope of state sovereign immunity "rest[s] on the words of the Amendment alone" is to engage in "ahistorical literalism." *Alden*, 527 U.S. at 730, 119 S.Ct. 2240.
>
> Rather than deriving from the Eleventh Amendment, state sovereign immunity derives "from the structure of the original Constitution itself." *Id.* at 728, 119 S.Ct. 2240. The states were sovereign before they joined to become the United States, and they "entered the federal system with their sovereignty intact." *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991).

*Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423, 429–30 (4th Cir. 2025).

individuals in federal court." (citations omitted)). A finding that a defendant enjoys sovereign immunity on a claim presents a jurisdictional bar to the court's adjudicative power over such a claim. *Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423, 428–29 (4th Cir. 2025) (noting that "[w]hen a sovereign properly asserts its sovereign immunity in a suit, the federal courts lack jurisdiction to proceed any further against it").

"The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 409 (D. Md. 2022); *see Anderson v. Dep't of Pub. Safety & Corr.*, No. 24-1339, 2024 WL 4814882, at *1 (4th Cir. Nov. 18, 2024) (identifying the three Eleventh Amendment immunity exceptions). The three exceptions include:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 [121 S.Ct. 955, 148 L.Ed.2d 866] (2001). Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 [124 S.Ct. 899, 157 L.Ed.2d 855] (2004). Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 [122 S.Ct. 1640, 152 L.Ed.2d 806] (2002).

*Doe.*, 595 F. Supp. 3d at 409 (citation modified) (quoting *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012)).

No exception is applicable here. With respect to abrogation, "Congress has not abrogated sovereign immunity for § 1983 suits." *Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Nor is the court able to discern any other legal basis of Plaintiff's claims for which Congress may have abrogated such sovereign immunity. Further, Plaintiff has not sought prospective injunctive relief against a state

official, nor is the relief she seeks prospective in nature, so the *Ex parte Young* exception is inapplicable. *See MediGrow LLC v. Natalie M. Laprade Med. Cannabis Comm'n*, 487 F. Supp. 3d 364, 373 (D. Md. 2020) ("The *Ex Parte Young* exception only permits actions against state officials, not the State itself or its instrumentalities."); *Jackson Creek Marine*, 153 F.4th at 435 (explaining "*Ex parte Young* applies only to a subset of suits seeking *prospective* relief" for ongoing violations of federal law) (emphasis in original). Finally, while the State has waived its sovereign immunity for certain types of claims raised in state court, *see, e.g.*, MD. CODE ANN., STATE GOV'T § 12-201(a), it has not waived its Eleventh Amendment immunity to suit in federal court, nor does Plaintiff argue any waiver in this action; and the court discerns none. *Pevia v. Hogan*, 443 F. Supp. 3d 612, 632 (D. Md. 2020).

In view of the foregoing, and where Plaintiff identifies no applicable exception to Defendant's invocation of Eleventh Amendment immunity,[8] and the court discerns none, the court will grant the Motion to Dismiss.

**B. *Rooker-Feldman* Doctrine**

In addition to the Eleventh Amendment immunity bar, Plaintiff's claims challenging the circuit court's order are barred by operation of the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine[9] reflects and preserves that distribution of authority between the Supreme Court

---

[8] Plaintiff's opposition on this point focuses on the nature of her claim, as opposed to the doctrine of Eleventh Amendment immunity. (ECF No. 18 at p. 2.) Plaintiff also seems to contend that this action is permissible under *Ex parte Young*; for the reasons set forth above, the *Ex parte Young* except is not applicable here. *Id.*

[9] By way of background:

> In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the plaintiff asked a federal district court to "declare[ ]" that an Indiana state court's judgment was "null and void" because it had been "rendered and affirmed in contravention of " the Federal Constitution. *Id.* at 414–15, 44 S.Ct. 149. The district court ruled it lacked jurisdiction over the plaintiff's claim, and the Supreme Court affirmed. See *id.* at 415–17, 44 S.Ct. 149. The Court explained that, under the federal jurisdictional statutes, "no court of the United States other than this court could entertain a proceeding to reverse or modify the [state-court]

and lower federal courts." *T.M. v. Univ. of Maryland Med. Sys. Corp.*, 139 F.4th 344, 348 (4th Cir.), *cert. granted,* 146 S. Ct. 878 (2025), and *aff'd,* 146 S. Ct. 1739 (2026). "The *Rooker-Feldman* doctrine generally prohibits lower federal courts from reviewing state court decisions; 'rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court.'" *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002) (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)). The doctrine "reflects and preserves that distribution of authority between the Supreme Court and lower federal courts." *T.M.*, 139 F.4th at 348.

"Under the *Rooker-Feldman* . . . doctrine, a 'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Am. Reliable Ins. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994)). Specifically, the doctrine is confined to cases that possess four characteristics: "those '[1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments.'" *T.M.*, 139 F.4th at 350 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

---

> judgment" because "[t]o do so would be an exercise of appellate jurisdiction." *Id.* at 416, 44 S.Ct. 149 . . . .
>
> Similarly, in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), two plaintiffs argued that the District of Columbia's highest court violated the Federal Constitution by denying their requests to be admitted to the D.C. bar without having attended an approved law school. See *id.* at 468–69 & n.3, 472, 103 S.Ct. 1303. The Supreme Court held that "to the extent that" the plaintiffs were asking a federal district court to "review" the D.C. court's "denial of their petitions for waiver," the district court "lacked subject matter jurisdiction" because "[r]eview of such determinations c[ould] be obtained only in [the Supreme] Court." *Id.* at 476, 482, 103 S.Ct. 1303.

*T.M. v. Univ. of Maryland Med. Sys. Corp.*, 139 F.4th 344, 348–49 (4th Cir. 2025), *cert. granted,* 146 S. Ct. 878 (2025), and *aff'd,* 146 S. Ct. 1739 (2026).

While undoubtedly a "narrow doctrine," *Lance v. Dennis*, 546 U.S. 459, 464 (2006), in determining its application, the court considers "not only [ ] issues actually presented to and decided by a state court, but also [ ] constitutional claims that are inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Edmondson Cmty. Org., Inc. v. Mayor & City Council of Baltimore*, 797 F. Supp. 3d 497, 514 (D. Md. 2025) (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)).

Although not entirely clear from her Complaint, Plaintiff's opposition further sheds light on the nature of her allegations and the relief she seeks. Plaintiff's claim arises from the Circuit Court for Prince George's County's Order of Judgment of Possession (which resulted in her being forced to vacate her home), which she contends "wrongfully disregarded a lawful instrument and interfered with her rights under the legally appointed trust overseeing the [Property]." (ECF No. 18 at p. 2.) Plaintiff's challenge is not merely tangential to, or overlapping in with, the circuit court's order; Plaintiff directly attacks the validity of the circuit's court's order and seeks relief from the order and resultant judgment. A review of the docket shows that Plaintiff filed multiple challenges pertaining to this matter in the circuit court action, *see* ECF No. 16-2 at pp. 17–19. None was successful. She then brought these challenges to the Appellate Court of Maryland and was similarly unsuccessful. *See Murray v. Murray*, No. 978, Sept. Term, 2024, 2025 WL 984705, at *1 (App. Ct. Md. Apr. 2, 2025).

The foregoing demonstrates that Plaintiff, who did not prevail in the preceding circuit court action, brings this action to challenge the state court judgment, *see T.M.*, 139 F.4th at 350; the action squarely raises claims inextricably intertwined with questions ruled upon by the state court,

*see Edmondson Cmty. Org.*, 797 F. Supp. 3d at 514. To that extent, the *Rooker-Feldman* doctrine bars suit.[10]

**C. Pleading Deficiencies**

Finally, Defendant seeks dismissal of Plaintiff's claims on the grounds of pleading deficiencies. Per Federal Rule of Civil Procedure 8(a), a complaint must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought.

FED. R. CIV. P. 8(a). Each "allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). Although a complaint need not contain detailed allegations, the facts alleged must be enough to raise a right to relief above the speculative level; a complaint requires "more than labels and conclusions," as "'courts are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

Plaintiff's Complaint fails to set forth a short and plain statement, with a supporting factual basis, of her claims asserted. As an initial matter, the court is unable to discern the basis of either Count I, which seemingly concerns the UCC or breach of contract, or Count II, which concerns Article I, Section 10 of the U.S. Constitution. Plaintiff's Count I cites UCC § 3-104, which

[10] Briefly, Plaintiff's contention that the *Rooker-Feldman* doctrine is inapplicable here because she does not seek review of the circuit court's judgment is disingenuous at best. Presently pending before this court is Plaintiff's Motion to Vacate, which expressly asks this court to "vacate . . . the Writ of possession or eviction pending further view" and "set aside the judgment" entered by the circuit court. This motion followed two other requests for similar relief. (ECF Nos. 1, 7.) It is hard to comprehend how Plaintiff can contend that she does not seek review of the circuit court's judgment when she has repeatedly asked this court to vacate it and set it aside.

concerns the definition of a negotiable instrument.[11] Further, as to Count II, Article 1, Section 10 of the United States Constitution provides:

> No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

U.S. CONST. ART. I, § 10, cl. 1. It is unclear how Plaintiff's allegation that she tendered an IBOE to discharge an obligation, which was not credited, constitutes a violation of either of these provisions (or how a statutory definition is subject to violation). Further, it is unclear that either provision—one of which provides a definition and the other of which concerns the authority of Congress, provides Plaintiff with a private cause of action upon the circumstances here.

Even assuming that these are proper claims, Plaintiff nonetheless fails to state plausible claims. Regarding Counts II and III, the vehicle for bringing claims alleging violations of Plaintiff's constitutional rights is 42 U.S.C. § 1983. *Ajenifuja v. Owusu*, No. CV DKC 23-1598, 2024 WL 1256259, at *3 n.3 (D. Md. Mar. 25, 2024), *aff'd,* No. 24-1363, 2024 WL 4707992 (4th Cir. Nov. 7, 2024). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n.3 (1979)). Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial

[11] "Maryland has adopted UCC Article III," which "applies to 'negotiable instruments,' a term defined by § 3-104. *Barrett v. Daly*, 743 F. Supp. 3d 672, 680 (D. Md. 2024); *see* MD. CODE ANN., COM. LAW § 3-104.

> capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Relevant here, it is well-settled that "a State is not a person within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). A state therefore cannot be sued under § 1983. *Kelly v. Maryland*, 267 F. App'x 209, 210 (4th Cir. 2008).

Accordingly, here, where Plaintiff seeks to assert constitutional violations against the State via 42 U.S.C. § 1983, her claims fail as a matter of law.[12]

Plaintiff's Count I similarly fails. Plaintiff's claim appears to be based on the theory that Plaintiff validly tendered an IBOE to discharge the obligation associated with her mortgage account. Court have previously recognized such arguments, which are typical of the sovereign citizen movement, as frivolous.[13] *See, e.g.*, *Muhammad v. State Emps. Credit Union*, No. 1:25CV972, 2025 WL 3096593, at *7 (M.D.N.C. Nov. 6, 2025), *report and recommendation adopted sub nom. Muhammad v. Spivey*, No. 1:25CV972, 2026 WL 87623 (M.D.N.C. Jan. 12, 2026) (noting that plaintiff's theory that she "validly tendered an International Bill of Exchange (IBOE) for lawful settlement and closure of her alleged mortgage account" is frivolous and collecting cases) (citation modified) (record citations omitted); *In re Brantley*, No. 2:24-CV-03603-BHH-MHC, 2025 WL 643042, at *5 (D.S.C. Feb. 5, 2025), *report and recommendation*

---

[12] Additionally, the factual basis for Count III, which appears to raise a procedural due process claim, is nonexistent. Plaintiff alleges no constitutionally protected interest. This in itself is fatal to her claim. *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) ("In order to claim entitlement to the protections of the due process clause—either substantive or procedural—a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been deprived of that protected interest by some form of state action.") (citations omitted)). Nor does she allege any factual basis for her claim that the State deprived her process to which she was entitled. *See Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015) ("To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law."). Her pleadings are thus similarly deficient on this point.

[13] Plaintiff attaches an "Affidavit of National Civilian" to her opposition wherein she states she is "a living woman" who "has never declared or agreed to being a 'Sovereign Citizen.'" (ECF No. 18-1 ¶ 1.) Whether Plaintiff is or is not a part of the sovereign citizen movement is of no moment and is not a concern of this court. The court's analysis turns on the argument Plaintiff has presented, which happens to be an argument typical of the sovereign citizen movement and which has been rejected by courts repeatedly.

*adopted,* No. 2:24-CV-3603-BHH, 2025 WL 641778 (D.S.C. Feb. 27, 2025) (finding plaintiff's appeal, which concerned in part the Bankruptcy Court's determination that her IBOE was not a valid form of currency, "clearly frivolous" and citing cases); *Swinton v. Walk*, No. 24-CV-4496, 2024 WL 4394738, at *3 (E.D. Pa. Oct. 3, 2024) (collecting cases with courts finding frivolous a plaintiff's claim that financial obligations may be satisfied by an IBOE); *Bey v. Bray*, No. 4:22-CV-933-SDJ-KPJ, 2023 WL 5987393, at *5 n.4 (E.D. Tex. Aug. 1, 2023), *report and recommendation adopted,* No. 4:22-CV-933-SDJ-KPJ, 2023 WL 6162742 (E.D. Tex. Sept. 21, 2023) (dismissing claims as frivolous and noting the IBOE claim did not have merit or prevent "collecting on the loan").

In another recent case before this court, a plaintiff similarly alleged that she provided an IBOE to the bank to settle the loan account at issue. *See Hampton v. Wells Fargo Bank, N.A.*, No. 25-CV-1935-ABA, 2026 WL 602089 (D. Md. Mar. 4, 2026). As best the court can discern, Plaintiff appears to make a similar argument here, with Plaintiff's "Memorandum of Law on IBOEs" that was filed with the circuit court (ECF No. 16-6)—stating similarly that the IBOE is tendered for the discharge of a debt and is an obligation of the United States. Judge Abelson of this court characterized the argument as "a version of the baseless 'redemption' theory," summarizing:

> Proponents of "redemption" theory falsely allege that they have a "monetary net worth" in an account maintained by the U.S. Department of the Treasury. *See Sovereign Citizens: A Growing Domestic Threat to Law Enforcement*, FBI Law Enforcement Bulletin (Sep. 1, 2011), https://leb.fbi.gov/articles/featured-articles/sovereign-citizens-a-growing-domestic-threat-to-law-enforcement. To access these funds and to pay creditors, those who employ this "redemption" theory file "pseudo-legal document[s] meant to serve as a repayment of debt." J.M. Berger, *Without Prejudice: What Sovereign Citizens Believe*, Geo. Wash. Program on Extremism (June 2016), at 6, https://extremism.gwu.edu/sites/g/files/zaxdzs5746/files/download

> s/JMB% 20Sovereign% 20Citizens.pdf. These "documents" may include UCC forms. FBI Law Enforcement Bulletin, *supra*. Adherents to "redemption" theory believe that such conduct "will compel the U.S. Treasury to fulfill [their] debts, such as credit card debts, taxes, and mortgages." *Id*.
>
> Courts in this District and others have resoundingly rejected claims rooted in "redemption" theory. Recently in *Potter v. Verizon Communications, Inc.*, the plaintiff had entered into a monthly contract with Verizon for phone and Internet services and was seeking relief on the premise that, "because he paid for his monthly phone and Internet services on credit, he is now a creditor of Verizon and that Verizon is responsible for paying interest" to him. *Potter v. Verizon Commc'ns Inc.*, Case No. 24-cv-1856-BAH, 2024 WL 3757901, at *1 (D. Md. Aug. 12, 2024). The Court there recognized the advancement of "redemption" theory, and its frequent use in fraud schemes, noting that "[c]ourts around the country have repeatedly dismissed as frivolous similar claims" and there was "no reason to deviate from the sound reasoning of th[o]se cases" in dismissing Mr. Potter's complaint. *Id*. at *2 (collecting cases).

*Hampton v. Wells Fargo Bank, N.A.*, No. 25-CV-1935-ABA, 2026 WL 602089, at *3–4 (D. Md. Mar. 4, 2026).

Here, any claim arising from Plaintiff's purported use of an IBOE fails to state a plausible claim. First, as Defendant notes, Plaintiff fails to allege any facts related to any obligation or account that would be subject to any discharge, any agreement, any breach of an agreement, or any damages that Plaintiff experienced as a result. *See Parkway 1046, LLC v. U. S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (noting elements of a breach of contract claim in Maryland are "contractual obligation, breach, and damages") (quoting *Kumar v. Dhanda*, 198 Md. App. 337, 345 (2011), *aff'd*, 426 Md. 185 (2012)). Additionally, as noted above, Plaintiff's claim arising from the IBOE and/or redemption theory have repeatedly been determined to be meritless and frivolous by courts.[14]

[14] The court also observes that the Appellate Court of Maryland recognized that Plaintiff's appeal similarly dealt in "legal theories advanced by the proponents of the 'sovereign citizen' movement, which [the court has] noted 'have

In addition to the above-examined Eleventh Amendment and *Rooker-Feldman* grounds, dismissal is further warranted on this basis.

## IV. CONCLUSION

For the reasons set forth herein, by separate order, the Motion to Dismiss will be granted.[15] Because the court finds it lacks jurisdiction, and Plaintiff's Complaint otherwise fails to state a plausible claim, Plaintiff's Motion to Vacate will be denied as moot.[16]

August 25, 2026

/S/
Julie R. Rubin
United States District Judge

---

not, will not, and cannot be accepted as valid.'" *Murray v. Murray*, No. 978, Sept. Term,2024, 2025 WL 984705, at *1 (App. Ct. Md. Apr. 2, 2025) (quoting *Anderson v. O'Sullivan*, 224 Md. App. 501, 512 (2015)).

[15] Because the court concludes that it lacks subject matter jurisdiction, dismissal must be without prejudice. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

[16] Even were the Motion to Vacate not mooted by dismissal, it would nonetheless be denied for the same reasons set forth herein.